## UNITED STATES DISTRICT AND BANKRUPTCY COURTS
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FREDERICK SELBY<br>306 Hilltop Lane<br>Chestertown, MD 21620 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-1708 |
| OFFICE OF THE ARCHITECT OF<br>THE CAPITOL<br>United States Capitol Building<br>Washington, D.C. | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff Frederick Selby alleges the following:

## NATURE OF THE ACTION

1. This is an action based on an unlawful discriminatory termination of Plaintiff's employment by Defendant Office of the Architect of the Capitol ("AOC") against Plaintiff based on Plaintiff's disabilities of depression, panic attacks, and generalized anxiety disorder under the Americans With Disabilities Act ("ADA"), as made applicable to the Defendant by 2 U.S.C. § 1311(a)(3) of the Congressional Accountability Act of 1995 ("CAA"), 2 U.S.C. § 1408(a).

2. This is an action based on an unlawful discriminatory termination of Plaintiff's employment by Defendant based on Defendant's failure to provide Plaintiff an effective reasonable accommodation for his disabilities of depression, panic attacks, and generalized anxiety disorder under the Americans With Disabilities Act ("ADA"), as made applicable to the Defendant by 2 U.S.C. § 1311(a)(3) of the Congressional Accountability Act of 1995 ("CAA"), 2 U.S.C. § 1408(a).

3.   This is an action based on unlawful discriminatory employment practices taken by Defendant against Plaintiff based on Defendant regarding Plaintiff as disabled for his disabilities of depression, panic attacks, and generalized anxiety disorder under the ADA, as made applicable to the Defendant by 2 U.S.C. § 1311(a)(3).

## JURISDICTION

4.   Jurisdiction is proper in this Court pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1408(a) as well as 28 U.S.C. § 1331.

5.   The Congressional Accountability Act provides that the United States district courts have jurisdiction over "any civil action commenced under section 1404 of this title and this section by a covered employee who has completed counseling under section 1402 of this title and mediation under section 1403 of this title. A civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation."

6.   Plaintiff, as a former employee of the Defendant pursuant to Section 101(3)(F) of the CAA, is a covered employee under the CAA.

7.   On December 20, 2017, Plaintiff timely filed a "Request for Counseling" in Case No. 18-AC-12 (DA, FM, RP) with the Office of Compliance pursuant to 2 U.S.C. § 1402 based on unlawful discriminatory and retaliatory employment practices in violation of Sections 201 and 207 of the CAA (2 U.S.C. §§ 1311 and 1317).

8.   On February 5, 2018, Plaintiff timely requested mediation pursuant to 2 U.S.C. §1403.

9.   The Office of Compliance extended the mediation period until April 23, 2018, to enable the parties to continue participating in mediation.

10.  On April 24, 2018, the Office of Compliance issued the "End of Mediation Notice."

11. Pursuant to 2 U.S.C. §1404, Plaintiff timely files this Complaint within 90 days of receipt of the "End of Mediation Notice."

## VENUE

12. Venue is appropriate in the District of Columbia under 28 U.S.C. § 1391.

## PARTIES

13. Plaintiff is a citizen of the United States of America.

14. Plaintiff avers that a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia.

15. Defendant Office of the Architect of the Capitol ("AOC") is subject to this Court's personal jurisdiction with respect to the civil action in question.

## FACTUAL BACKGROUND

16. On or about July 23, 2007, Defendant hired Plaintiff as an Air Conditioning Equipment Mechanic. In this position, Plaintiff annually received either Fully Successful or Outstanding performance evaluation ratings.

17. On September 10, 2007, Plaintiff was diagnosed with chronic generalized anxiety disorder with panic attacks. He also suffers from depression dating back to 1991. According to Plaintiff's Certified Registered Nurse Practitioner ("CRNP"), Elizabeth Sipala, these conditions commenced in 1996 and will continue throughout his lifetime.

18. The depression, anxiety, and panic attacks hinder Plaintiff's ability to focus. He takes medications, including Lexapro and Alprazolam, to relieve his anxiety and depression; however, those medications make him drowsy, slow his thought process and motor functions, and limit his ability to concentrate and effectively interact with others. During flare-ups of his anxiety,

Plaintiff cannot drive or operate heavy machinery due to the medication that he takes to manage his anxiety.

19. In October 2013, Plaintiff earned a promotion to the position of Maintenance Mechanic Work Leader. His tour of duty was Monday through Friday and he worked the day-shift from about 7:30am until 5:00pm. In this position, Plaintiff annually received all Outstanding ratings on his performance evaluations.

20. On or about October 2013, Charity Anderson became Plaintiff's first-line supervisor.

21. In August or September 2014, Plaintiff earned a promotion to the positon of Maintenance Mechanic Supervisor, WS-4749-11/03. His tour of duty was Monday through Friday, and he worked the night-shift from 2:00pm until 11:00pm.

22. Prior to approximately 2015, Plaintiff had less than a handful of panic attacks per year, and he was able to treat those attacks without any impact on his ability to successfully perform his duties. He treated those attacks with medication, including Alprazolam. Since 2007, of the 208 hours of annual leave he accrued each year, he routinely rolled over about 200 hours of annual leave per year, and did not have any issues with attendance.

23. While working as a Maintenance Mechanic Supervisor on the night-shift, Plaintiff experienced job tensions with his supervisor Ms. Anderson. These job tensions arose around the time when Kenny Hodgson, the Daytime Maintenance Mechanic Supervisor, passed away on March 2, 2015. Plaintiff asked his second-line supervisor, Deatra Trinidad, if he could be reassigned non-competitively into the vacant position. He wanted to be moved to the day shift because it provided a better quality of life.

24. It was not unusual for Defendant to non-competitively move supervisors to other shifts when there is a vacancy. However, Superintendent Trent Wolfersberger denied Plaintiff's

request and told him to apply for the job. Subsequently, Plaintiff asked the Chief Operating Officer, Christine Merdon, to reassign him non-competitively. Ms. Merdon supported her manager's position and told Plaintiff to apply for the position.

25. Around April 2015, Plaintiff applied for the job, but was not selected. Instead, the Defendant selected a substantially less-qualified person from outside the AOC, Joshua Butcher. Ever since his non-selection, Plaintiff experienced tension with Ms. Anderson, which in turn caused him to suffer panic attacks with steadily increasing frequency.

26. Specifically, for example, Ms. Anderson gave Plaintiff work that Mr. Butcher could not perform, and when Plaintiff complained that he had too much work, she would continue to give him assignments. Ms. Anderson also gave Plaintiff assignments with unduly short deadlines for completion. Ms. Anderson also subjected Plaintiff to undue scrutiny of his performance and conduct. For example, on at least one occasion, Ms. Anderson documented in writing her false accusation that Plaintiff did not get along with people.

27. The stress of his new position, the change to night-shift, and discord with Ms. Anderson exacerbated Plaintiff's panic disorder such that he began to suffer multiple panic attacks per week.

28. The Alprazolam that Plaintiff took for these attacks rendered Plaintiff unable to drive, causing him to take excessive absences. The majority of the time, Plaintiff commuted to work by driving two hours each way between his home in Chestertown, Maryland to the Supreme Court building in downtown, Washington, D.C. There was a commuter bus that was available, but the commute was longer than driving.

29. According to Ms. Anderson, in June 2015, Plaintiff's attendance became unacceptable.

30. As of November 2015, Plaintiff's anxiety disorder was no longer stable.

31. In early 2016, Plaintiff asked Ms. Anderson to be moved back to his daytime shift Work Leader position that he had previously held due to his mental and physical health. According to Ms. Anderson, Ms. Merdon denied the request.

32. In March 2016, Plaintiff's health became of such concern that Ms. Anderson instructed some of his coworkers, Barry Barret and Steve Pounce, to perform a welfare check on him.

33. Around March 2016, Plaintiff requested leave pursuant to the Family and Medical Leave Act ("FMLA") because he was missing work due to his panic attacks and his anxiety.

34. On March 28, 2016, Lois Ort, Secretary of the Architect of the Capitol, approved Plaintiff's request for intermittent FMLA for his panic attacks. His FMLA documentation stated Plaintiff suffered flare ups approximately one time per month for one day. The FMLA approval was subject to re-certification every 6 months.

35. On or about early April 2016, Plaintiff submitted a reasonable accommodation request through the Equal Employment Opportunity and Diversity Programs Office of a reassignment to the day-shift.

36. In April 2016, the Defendant considered one or more of Plaintiff's medical conditions to be disabling.

37. In April 2016, the Defendant determined that one or more of Plaintiff's disabilities interfered with him meeting the established criteria for regular work attendance.

38. On April 22, 2016, as a reasonable accommodation, Defendant detailed Plaintiff to the Project Planning and Management Division for 120 days to the non-supervisory position of Electronics Technician (Building Automation System), which was on the day shift. Despite the provision of this reasonable accommodation, Plaintiff's absences from work continued.

39. On August 23, 2016, in a second effort to reasonably accommodate Plaintiff, Defendant detailed him back to the Supreme Court Building and Grounds to perform non-supervisory auxiliary duties on the day shift for a period not to exceed 120 days (*i.e.*, December 21, 2016). Despite the provision of this reasonable accommodation, Plaintiff's absences from work continued.

40. After the end of the second temporary reassignment, Defendant did not take any additional steps to attempt to reasonably accommodate Plaintiff.

41. On August 29, 2016, Ms. Trinidad requested updated medical documentation from Plaintiff because "due to several work place observations, there has been concerns with [Plaintiff's] ability to work in live electrical panels as well as from a ladder." Ms. Trinidad further stated that Plaintiff's frequent absences were impacting his ability to perform the work and she, Ms. Anderson, and Mr. Wolfersberger were concerned about Plaintiff's ability to meet the requirements to perform his job duties. Ms. Trinidad also determined to no longer allow Plaintiff to take FMLA more than once per month without updated FMLA documentation.

42. On October 3, 2016, Plaintiff submitted updated FMLA certification documentation completed by CRNP Sipala, which stated that Plaintiff would likely experience flare ups of his medical condition two times per week lasting two days per episode. She also stated the flare ups seem to be coming at more regular intervals.

43. On November 22, 2016, at the suggestion and encouragement of Susan Reider, Chief, Employee/Labor Relations Branch, and Ms. Trinidad, Plaintiff submitted a disability retirement application. In the accompanying Supervisor Statement completed by Ms. Anderson on November 17, 2016, she stated that Plaintiff's performance was at least fully successful in each critical element of his position.

44. On December 20, 2016, Human Resources Specialist, Shirley Mercer, stated in Plaintiff's disability retirement application that Defendant made reasonable accommodation efforts, but that reassignment was not possible because there were no vacant positions at the same grade or pay level.

45. Once Plaintiff's second detail ended, he continued to perform non-supervisory auxiliary duties on the day shift at the Supreme Court Building and Grounds while he awaited a decision on his disability retirement application.

46. Around February or March 2017, Ms. Anderson sought and relied upon Plaintiff's expertise for the purposes of editing a vacancy announcement for an Air Conditioning Equipment Mechanic position on the daytime shift, which Defendant later posted. Plaintiff was qualified for this position as he had previously performed successfully in that position for about five years in the same Supreme Court building and it is in his exact specialty of direct digital controls.

47. Around March 1, 2017, Plaintiff informed Ms. Trinidad that he had a continued need for FMLA; however, on March 3, 2017, the Defendant informed Plaintiff that he was no longer eligible for FMLA because he did not meet the criteria of having worked 1,250 hours in the preceding year.

48. On April 28, 2017, the Office of Personnel Management ("OPM") notified Defendant that it had denied Plaintiff's disability retirement application.

49. On May 18, 2017, Ms. Trinidad issued Plaintiff a Notice of Proposed Removal for excessive absenteeism and failure to meet the requirements of the position. Specifically, the Notice of Proposed Removal stated that OPM notified the Defendant on April 28, 2017, that it had denied Plaintiff's disability retirement request.

50. When Plaintiff received the Notice of Proposed Removal, he also learned for the first time that OPM had denied his disability retirement application. On July 19, 2017, Plaintiff requested reconsideration and is awaiting a decision from OPM.

51. On June 2, 2017, Plaintiff, through counsel, presented a written reply to the Notice of Proposed Removal. In his reply and while still employed by the AOC, Plaintiff requested a voluntary demotion to his prior non-supervisory Air Conditioning Equipment Mechanic position on the daytime shift as a reasonable accommodation, as that would eliminate the stressors that exacerbated his medical conditions. Plaintiff informed Defendant that CRNP Sipala believed that a return to a nonsupervisory Mechanic position, on a permanent basis, would likely resolve his panic disorder.

52. On June 14, 2017, Plaintiff's third-line supervisor, Joseph Campbell, issued a decision sustaining the proposed removal action.

53. On June 23, 2017, Plaintiff's separation from Federal service became effective.

54. On August 1, 2017, Plaintiff appealed his removal via a formal administrative hearing.

55. On August 18, 2017, Stephen T. Ayers, Architect of the Capitol, upheld Mr. Campbell's decision after an August 1, 2017, appeals hearing had been conducted.

56. Plaintiff avers that he was treated harsher than similarly situated coworkers, including John Fortez (no known disability) and Carla Pimintel (no known disability). Plaintiff, Mr. Fortez, and Ms. Pimintel were similarly situated to each other because each had attendance challenges, each was subordinate to Ms. Anderson and Ms. Trinidad, and each was serving in non-supervisory positions at the time management addressed their respective attendance challenges.

57. Furthermore, the Defendant elected not to reassign Plaintiff from a supervisory position back to his old non-supervisory Maintenance Mechanic position, unlike his similarly situated

coworker, Claude Hale (no known disability). Mr. Hale was also within Ms. Anderson's and Ms. Trinidad's chain of command.

## COUNT I: UNLAWFUL DISCRIMINATION BASED ON PLAINTIFF'S DISABILITY PURSUANT TO THE AMERICANS WITH DISABILITIES ACT: TERMINATION OF PLAINTIFF'S EMPLOYMENT

58. Plaintiff incorporates by reference each and every allegation set forth in Paragraph 1 through Paragraph 57 of this Complaint as though fully set forth herein.

59. The activities described in Paragraphs 49-57 herein this Complaint regarding Defendant's termination of Plaintiff's employment with  the federal service was an unlawful discriminatory employment practice based on Plaintiff's disabilities of depression, panic attacks, and generalized anxiety disorder in violation of 2 U.S.C. § 1311(a)(3) and the prohibitions against unlawful discriminatory employment practices set forth therein.

60. There was a causal connection between Plaintiff's disabilities of depression, panic attacks, and generalized anxiety disorder and Defendant's termination of Plaintiff's employment.

61. The effect of the unlawful discriminatory employment practices and actions taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms, conditions and privileges of Plaintiff's employment and his employment status.

62. As a direct and proximate cause of the unlawful discriminatory employment practices and actions taken as set forth hereinabove Plaintiff has suffered and continues to suffer harm, including but not limited to lost wages, pecuniary damages, and nonpecuniary damages.

## COUNT II: UNLAWFUL DISCRIMINATION BASED ON DEFENDANT REGARDING PLAINTIFF AS DISABLED PURSUANT TO THE AMERICANS WITH DISABILITIES ACT: TERMINATION OF PLAINTIFF'S EMPLOYMENT

63. Plaintiff incorporates by reference each and every allegation set forth in Paragraph 1 through Paragraph 57 of this Complaint as though fully set forth herein.

64. The activities described in Paragraphs 49-57 herein this Complaint regarding Defendant's termination of Plaintiff's employment with the federal service was an unlawful discriminatory employment practice based on Defendant regarding Plaintiff as disabled in violation of 2 U.S.C. § 1311(a)(3) and the prohibitions against unlawful discriminatory employment practices set forth therein.

65. The activities described including at Paragraphs 32-35, 41, 43, and 49-57 in this Complaint regarding Defendant conducting a welfare check, the circumstances surrounding his FMLA request, the circumstances surrounding the reasonable accommodation requests, and the suggestion for Plaintiff to file for disability retirement evidence an unlawful discriminatory employment practice based on Defendant regarding Plaintiff as disabled in violation of 2 U.S.C. § 1311(a)(3) and the prohibitions against unlawful discriminatory employment practices set forth therein.

66. There was a causal connection between Plaintiff's disabilities of depression, panic attacks, and generalized anxiety disorder and Defendant regarding Plaintiff as disabled pursuant to the Americans With Disabilities Act and Defendant's termination of Plaintiff.

67. The effect of the unlawful discriminatory employment practices and actions taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms, conditions and privileges of Plaintiff's employment and his employment status.

68. As a direct and proximate cause of the unlawful discriminatory employment practices and actions taken as set forth hereinabove Plaintiff has suffered and continues to suffer harm, including but not limited to lost wages, pecuniary damages, and nonpecuniary damages.

## COUNT III: UNLAWFUL DISCRIMINATION BASED ON DEFENDANT'S FAILURE TO EFFECTIVELY ACCOMMODATE PLAINTIFF'S DISABILITIES PURSUANT TO THE AMERICANS WITH DISABILITIES ACT BY WAY OF A REASSIGNMENT TO A NONSUPERVISORY PERMANENT DAY SHIFT POSITION

69. Plaintiff incorporates by reference each and every allegation set forth in Paragraph 1 through Paragraph 57 of this Complaint as though fully set forth herein.

70. The activities described including at Paragraphs 32-57 herein this Complaint regarding Defendant's failure to provide Plaintiff an effective reasonable accommodation pursuant to the Americans With Disabilities Act by way of a reassignment to a nonsupervisory permanent day shift position, was an unlawful discriminatory employment practice based on Plaintiff's disabilities of depression, panic attacks, and generalized anxiety disorder in violation of 2 U.S.C. § 1311(a)(3) and the prohibitions against unlawful discriminatory employment practices set forth therein.

71. There was a causal connection between Plaintiff's disabilities of depression, panic attacks, and generalized anxiety disorder and Defendant's failure to provide Plaintiff an effective reasonable accommodation pursuant to the Americans With Disabilities Act by way of a reassignment to a nonsupervisory permanent day shift position.

72. The effect of the unlawful discriminatory employment practices and actions taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms, conditions and privileges of Plaintiff's employment and his employment status.

73. As a direct and proximate cause of the unlawful discriminatory employment practices and actions taken as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, medical expenses, attorney's fees, emotional distress and other damages.

## **RELIEF SOUGHT**

Plaintiff prays that this honorable Court direct the following relief be granted:

a. Retroactively reinstate Plaintiff to his former position of Maintenance Mechanic Supervisor, WS-4749-11/03, effective June 23, 2017, with back pay, plus benefits and interest;

b. Provide Plaintiff a reasonable accommodation ;

c. Award Plaintiff compensatory damages consistent with 2 U.S.C. § 1311(b);

d. Award Plaintiff other damages consistent with 2 U.S.C. § 1317(b);

e. Award Plaintiff reasonable attorney's fees, expert fees, and any other costs incurred in accordance with 2 USC §1361; and

f. Grant such other and further relief as this honorable Court deems necessary or appropriate to afford full and complete relief.

## **JURY TRIAL DEMANDED**

Plaintiff requests a jury trial.

July 20, 2018                                   /s/ Ricardo J.A. Pitts-Wiley
                                               _____
                                               Ricardo J.A. Pitts-Wiley, Senior Associate
                                               DC Bar #: 982952
                                               THE FEDERAL PRACTICE GROUP
                                               1750 K St, N.W., Suite 900
                                               Washington, D.C.  20006
                                               (202) 808-3133 Telephone
                                               (888) 899-6053 Facsimile
                                               rpittswiley@fedpractice.com

                                               *Counsel for Plaintiff*